# EXHIBIT A

**Proposed Order**

**IN THE COURT OF COMMON PLEAS**

**OF PHILADELPHIA COUNTY, PENNSYLVANIA**

**Plaintiff:**

Mariamou Tangara,

v.

**Defendant:**

Snappt, Inc.,

**Case No.:  240803557**

**ORDER**

AND NOW, this ___ day of _____, 2024, upon consideration of **Plaintiff's Motion for Leave to Amend the Complaint**, and any response thereto, it is hereby ORDERED and DECREED that:

1. **Plaintiff's Motion for Leave to Amend** is GRANTED.

2. Plaintiff shall file the **Amended Complaint** within **20 days** of the date of this Order.

3. The Amended Complaint shall be attached to this Order as **Exhibit A**.

BY THE COURT:

J.

**IN THE COURT OF COMMON PLEAS**

**OF PHILADELPHIA COUNTY, PENNSYLVANIA**

**Plaintiff:**

Mariamou Tangara,

v.

**Defendant:**

Snappt, Inc.,

**Case No.: 240803557**

**MOTION FOR LEAVE TO AMEND COMPLAINT**

**TO THE HONORABLE COURT:**

Plaintiff, **Mariamou Tangara**, by and through her undersigned counsel, hereby moves this Honorable Court for leave to amend the complaint pursuant to **Pa.R.C.P. 1033**, and in support thereof states as follows:

1. On September 17, 2024, Plaintiff filed the initial complaint in this action against Snappt, Inc. in the Philadelphia Court of Common Pleas. The original causes of action included product liability, violation of the FCRA, fraud, negligence, and other claims as outlined in the original complaint.

2. Plaintiff now seeks leave to amend the complaint to add three additional causes of action:

   a. Breach of Implied Warranty of Merchantability;

   b. Unjust Enrichment; and

   c. Breach of the Implied Covenant of Good Faith and Fair Dealing.

3. Under Pa.R.C.P. 1033, amendments to pleadings are permitted at any stage of the proceedings, and such amendments should be allowed in the interest of justice to ensure that all claims are properly before the Court for adjudication. Pennsylvania courts have consistently held that leave to amend should be freely granted unless there is prejudice to the opposing party (Phillips v. Lock, 86 A.2d 791 (Pa. 1952)).

4. These new causes of action arise out of the same set of facts as those originally pled, specifically involving Snappt, Inc.'s defective income verification system, and are based on the same conduct and transactions.

5. The amended complaint is attached hereto as Exhibit A. The proposed amendments do not introduce new factual allegations but add additional legal claims that are directly relevant to Plaintiff's case and necessary to provide complete relief.

6. Granting leave to amend will not prejudice the Defendant, as Defendant is already on notice of the factual circumstances underlying these claims. Moreover, the discovery process is still ongoing, and the amendment will not delay these proceedings.

7. Plaintiff respectfully requests that this Honorable Court grant Plaintiff leave to amend the complaint, and that the amended complaint be filed within 20 days of the Court's order.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant Plaintiff's Motion for Leave to Amend the Complaint in the form attached hereto and allow the amended complaint, attached as Exhibit A, to be filed.

Respectfully submitted,

Mariamou Tangara

Date: October 9, 2024

**VERIFICATION**

I, **Mariamou Tangara**, Plaintiff in the above-captioned matter, verify that the facts set forth in the foregoing **Motion for Leave to Amend the Complaint** are true and correct to the best of my knowledge, information, and belief. I understand that false statements made herein are subject to penalties relating to unsworn falsification to authorities pursuant to **18 Pa.C.S. § 4904**.

Date: October 9, 2024

Mariamou Tangara

*Mariamou Tangara*

4

**CERTIFICATE OF SERVICE**

I, Mariamou Tangara, hereby certify that a true and correct copy of the Plaintiff's Motion for

Leave to Amend the Complaint, the Proposed Amended Complaint (Exhibit A), and the

Proposed Order to be served upon Defendant's counsel via email and fax as supplementary

notice, with a copy to be mailed via first-class mail, postage prepaid, on October 9, 2024, to the

following:

Thomas R Decesar
K & L Gates
17 N. SECOND ST.
18TH FLOOR
HARRISBURG PA 17101
(717)231-4501 - FAX
tom.decesar@klgates.com

Date: October 9, 2024

Mariamou Tangara

EXHIBIT A

**THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**

**CIVIL ACTION – LAW**

|  |  |
|---|---|
| **MARIAMOU TANGARA,** <br><br> Plaintiff, <br><br> v. <br><br> **SNAPPT, INC.,** <br><br> Defendant. | **Case No.: 240803557** <br><br><br> **COMPLAINT** |

Plaintiff Mariamou Tangara ("Plaintiff"), by and through her undersigned counsel, hereby files this Complaint against Defendant Snappt, Inc. ("Defendant"), and in support thereof, states as follows:

**PRELIMINARY STATEMENT**

1. This action arises from Defendant Snappt, Inc.'s unlawful conduct in connection with its use of a defective and deceptive AI-based income verification system, which wrongfully flagged Plaintiff Mariamou Tangara's legitimate income documents as fraudulent. Defendant's actions resulted in the wrongful denial of Plaintiff's housing application, causing her to suffer significant financial, emotional, and physical harm.

2. Defendant Snappt, Inc. represents itself as a reliable and accurate provider of income verification services for rental properties, claiming that its proprietary AI system can detect fraudulent documents with high accuracy. However, Snappt's system is inherently flawed and unable to properly process paystubs generated by certain payroll software, including those used by Plaintiff's employer. Defendant failed to disclose these limitations, misleading Plaintiff and other consumers into relying on a defective system.

3. Plaintiff, relying on Snappt's representations, submitted her paystubs for verification in connection with her rental application for an apartment in Philadelphia, Pennsylvania. Despite submitting valid and accurate income documents, Plaintiff's paystubs were

wrongfully flagged as fraudulent due to the system's inability to properly analyze them. As a result, Plaintiff was denied housing and forced to incur significant expenses for temporary accommodations.

4.  Defendant's failure to provide transparency regarding the limitations of its AI system, coupled with its refusal to provide Plaintiff with a comprehensive explanation of the assessment process, caused Plaintiff severe emotional distress, financial losses, and reputational harm.

5.  This action seeks to hold Defendant Snappt, Inc. accountable for its violations of Pennsylvania product liability laws, the Fair Credit Reporting Act, the Philadelphia Fair Practices Ordinance, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and for committing fraud, negligence, and intentional infliction of emotional distress. Plaintiff seeks compensatory damages, punitive damages, attorney's fees, and injunctive relief to prevent Defendant from continuing to harm consumers with its deceptive and defective practices.

## JURISDICTION AND VENUE

6.  This Court has personal jurisdiction over Defendant Snappt, Inc. under 42 Pa. C.S. § 5301(a)(2)(iii) because Defendant, a foreign corporation, conducts substantial and ongoing business activities within the Commonwealth of Pennsylvania. Defendant provides income verification services to prospective tenants in Pennsylvania, including Plaintiff, and therefore has sufficient minimum contacts with the state. By engaging in these activities, Defendant has purposefully availed itself of the privilege of conducting business in Pennsylvania, making the exercise of jurisdiction consistent with International Shoe Co. v. Washington, 326 U.S. 310 (1945).

7.  The Court has general jurisdiction over Defendant Snappt, Inc. because Defendant has engaged in continuous and systematic business activities in Pennsylvania. These activities include providing AI-based income verification services for rental housing applications across the state, including those for properties located in Philadelphia, Pennsylvania, thus meeting the requirements of 42 Pa. C.S. § 5301(a)(2)(iii) and Daimler AG v. Bauman, 571 U.S. 117 (2014).

8.   The Court also has specific jurisdiction over Defendant Snappt, Inc. under 42 Pa. C.S. § 5322(a)(1)(ii) because Plaintiff's claims arise directly from Defendant's activities in Pennsylvania. Defendant's income verification system was used in connection with Plaintiff's rental application for an apartment in Philadelphia, and the system's failure caused Plaintiff's denial of housing. These activities create a direct connection between Defendant's conduct and Plaintiff's injury, establishing specific jurisdiction.

9.   Venue is proper in the Philadelphia Court of Common Pleas under 42 Pa. C.S. § 5301(a)(3) and Pa. R.C.P. 1006(b) because a substantial portion of the events giving rise to Plaintiff's claims occurred in Philadelphia County. Plaintiff applied for a rental unit in Philadelphia and was wrongfully denied housing due to the actions of Defendant's AI system. The wrongful conduct and resulting harm occurred in Philadelphia.

10.  Venue is also proper under 42 Pa. C.S. § 931 and Pa. R.C.P. 2179(a)(2) because Defendant conducted substantial business in Philadelphia County, providing its services in connection with rental properties in the city. The cause of action arises from these business activities, and Plaintiff suffered harm in Philadelphia.

## PARTIES

11.  Plaintiff Mariamou Tangara is an adult individual residing in Philadelphia, Pennsylvania. At all relevant times, Plaintiff was a prospective tenant applying to rent an apartment in Philadelphia.

12.  Defendant Snappt, Inc. is a corporation incorporated in Delaware with its principal place of business in California. Defendant provides AI-driven income verification services to landlords and property managers nationwide, including in Pennsylvania. Defendant conducts substantial business in Pennsylvania by providing income verification services to landlords and property managers renting properties within the state.

## FACTUAL ALLEGATIONS

10.  In July 2024, Plaintiff applied to rent an apartment in Philadelphia, Pennsylvania, managed by The Clark.

11.  As part of the rental application process, Plaintiff was required to submit her income documentation for verification through Defendant Snappt's AI-driven income verification

system. Plaintiff paid an application fee, which covered the cost of the verification services provided by Defendant.

12. Plaintiff submitted valid, unedited paystubs from her employer, which were generated by a payroll system that Defendant's AI system could not properly analyze.

13. Despite Plaintiff's valid income, Defendant's system wrongfully flagged her paystubs as fraudulent, falsely indicating that her documents had been altered.

14. As a result, Plaintiff was denied housing, causing her significant financial harm as she was forced to seek costly, unstable temporary accommodations.

15. The deprivation of housing as a result of Defendant's faulty application also caused Plaintiff emotional distress, including anxiety, sleeplessness, and chest pain, inducing her to seek medical attention.

16. Plaintiff, in an attempt to resolve the issue on her own, used different PDF management software to combine her multi-paged paystub submissions into a single document and later tried separating them into individual pages, hoping this would prevent Snappt's software from flagging her documents. Despite these efforts to rearrange, combine, and separate her submissions, Snappt's AI system continued to falsely flag her paystubs as altered, and none of these methods resolved the issue.

17. Despite numerous attempts to correct the flawed results by contacting Snappt's dispute department, Plaintiff was met with silence. The wanton disregard took an emotional toll on Plaintiff, as she was rendered homeless at that point. She fell into a major depressive state, began missing work for days, and suffered panic attacks and post traumatic stress disorder (PTSD) induced flashbacks to a childhood shrouded in housing insecurity.

18. Defendant failed to disclose that its AI system was incapable of accurately verifying income documents from certain payroll systems, including the one used by Plaintiff's employer.

19. Defendant also failed to provide Plaintiff with any detailed report or explanation of the results of the AI system's assessment, leaving her without the ability to correct the wrongful denial of housing.

## FIRST CAUSE OF ACTION

**Product Liability – Design Defect and Failure to Warn Under Pennsylvania Law**

**I. Design Defect**

20. Plaintiff incorporates by reference all allegations set forth in the preceding paragraphs as though fully stated herein.

21. Under Pennsylvania product liability law, strict liability is imposed for defective products under Section 402A of the Restatement (Second) of Torts, which has been adopted by Pennsylvania courts. A product is defective when it is unreasonably dangerous due to a design defect, and a manufacturer or seller is held strictly liable for any injuries caused by such a defect.

22. Defendant Snappt, Inc.'s AI-based income verification system is a product subject to Pennsylvania's strict product liability standards. The system was defectively designed, making it unreasonably dangerous for its intended use of verifying income for rental housing applications.

23. Snappt's AI system was designed to analyze income verification documents, including paystubs, but it was incapable of accurately processing paystubs generated by certain payroll systems, including those used by Plaintiff's employer. This design defect led to the wrongful flagging of Plaintiff's legitimate paystubs as fraudulent.

24. Pennsylvania follows a risk-utility analysis when determining whether a product is defectively designed. This analysis weighs the risk of harm against the utility of the product. In this case, Snappt's AI system posed significant risks of harm to consumers, including wrongful housing denials, without providing adequate utility for individuals with non-traditional or alternative payroll systems. As demonstrated in Tincher v. Omega Flex, Inc., 628 Pa. 296, 104 A.3d 328 (2014), a product is defectively designed if the risks outweigh its benefits, or if a safer, alternative design was feasible.

25. There were feasible, safer alternatives available to Snappt that would have allowed the system to accurately process payrolls from a wider range of employers, including those used by Plaintiff's employer. Despite these safer alternatives, Snappt chose to use an AI system that could not adequately verify all income sources, making the system unreasonably dangerous.

26. As a direct and proximate result of the design defect in Snappt's product, Plaintiff was wrongfully denied housing, resulting in financial losses, emotional distress, and reputational harm.

27. Under Pennsylvania's strict liability framework, Defendant is liable for all damages proximately caused by the defective design of its AI system, regardless of intent or fault.

28. Plaintiff seeks compensatory damages for financial, emotional, and reputational harm caused by the design defect in Snappt's AI system, as well as any other relief the court deems just and proper.

---

**II. Failure to Warn**

29. Plaintiff incorporates by reference all allegations set forth in the preceding paragraphs as though fully stated herein.

30. Under Pennsylvania law, a manufacturer or seller has a duty to provide adequate warnings or instructions if its product poses any foreseeable risks that are not obvious to the consumer. The failure to provide such warnings renders the product unreasonably dangerous, even if the product itself is not defectively designed. This principle is recognized in Phillips v. A-Best Products Co., 542 Pa. 124, 665 A.2d 1167 (1995).

31. Defendant Snappt, Inc. failed to provide adequate warnings or instructions regarding the limitations of its AI system, particularly the system's inability to properly process paystubs generated by certain payroll software, including those used by Plaintiff's employer.

32. A product can be considered defective due to failure to warn if:

   a. The manufacturer or seller knew or should have known of the risks associated with the product's use; and

   b. The manufacturer or seller failed to provide adequate warnings or instructions to the consumer about those risks.
   These principles are outlined in Davis v. Berwind Corp., 547 Pa. 260, 690 A.2d 186 (1997).

33. Snappt knew or should have known that its AI system was incapable of accurately processing paystubs from certain payroll systems. Despite this knowledge, Snappt failed to warn Plaintiff and other consumers of this limitation, depriving them of the ability to mitigate or avoid the risk of wrongful flagging and housing denials.

34. Snappt's failure to provide adequate warnings regarding the risks associated with using its system created a foreseeable danger, as consumers like Plaintiff were led to believe the system could reliably verify their income. Plaintiff justifiably relied on Snappt's service, unaware of the system's limitations, and was consequently harmed by the inaccurate income verification.

35. Under Pennsylvania law, failure to warn renders a product unreasonably dangerous and can result in strict liability. Snappt's failure to adequately inform consumers of its system's limitations resulted in Plaintiff being wrongfully denied housing, causing financial harm, emotional distress, and reputational damage.

36. Snappt's failure to provide proper warnings directly caused Plaintiff's injuries, as Plaintiff could have taken steps to avoid the consequences of the AI system's defects had she been properly informed.

37. Plaintiff seeks compensatory damages for financial, emotional, and reputational harm caused by Snappt's failure to provide adequate warnings regarding its AI system, as well as any other relief the court deems just and proper.

## SECOND CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability Under UCC**

38. Plaintiff incorporates by reference all allegations set forth in the preceding paragraphs as though fully stated herein.

39. At all relevant times, Defendant, Snappt, Inc., was engaged in the business of providing income and document verification services using its proprietary AI technology for consumers applying for housing, including the Plaintiff.

40. Under Pennsylvania law, specifically under 13 Pa. C.S.A. § 2314, the Uniform Commercial Code (UCC) governs the implied warranty of merchantability for the sale of goods. While this typically applies to physical goods, Pennsylvania courts have applied it to services that involve software or products as a part of the offering, when they are sold to consumers.

41. In this case, Snappt's AI verification system, which serves to verify income documentation for housing applications, constitutes a product or service offered in the ordinary course of business, and Snappt is a merchant that deals in this type of service.

42. The implied warranty of merchantability means that the product or service provided must be of a quality that is fit for the ordinary purposes for which such goods or services are used, be consistent in quality and performance, and meet a reasonable consumer's expectations in the market. A breach of this warranty occurs when the product or service is defective, unreliable, or unfit for its intended purpose.

43. Snappt, Inc., through its proprietary AI system, represented that it would provide accurate and reliable verification services for the purpose of verifying consumer income in a housing application context. Plaintiff relied on Snappt's representations and submitted her income verification documents for review, expecting the service to operate properly and in accordance with industry standards.

44. However, Snappt's AI system was not fit for its intended purpose. The system wrongfully flagged Plaintiff's legitimate and unedited pay stubs as "altered" or "fraudulent," resulting in the wrongful deprivation of housing opportunities, and causing her to suffer significant financial, emotional, and physical harm.

45. Snappt's service failed to meet the standard of merchantability because:

    a. The system provided inaccurate results that were unreliable for income verification purposes;

    b. The service was incompatible with pay stubs from certain payroll systems, thus limiting its ability to provide reliable results to individuals like the Plaintiff whose employers used payroll systems not recognized by Snappt;

    c. The service's failure to properly evaluate the income documents caused financial harm to Plaintiff by wrongfully denying her housing;

    d. The system was defective in its design and/or operation by wrongfully flagging valid documents as fraudulent, making it unfit for the ordinary purpose of income verification.

46. Plaintiff even made repeated attempts to resubmit her documents, including using various PDF management software to rearrange or separate her pay stubs in an attempt to avoid

the wrongful flagging, but Snappt's system continued to fail to properly verify the documents.

47. As a result of the breach of implied warranty, Plaintiff has suffered actual damages including:

    a. Loss of housing opportunity;

    b. Financial losses due to additional expenses incurred (such as hotel stays and application fees);

    c. Emotional distress and mental anguish, which manifested in physical symptoms such as panic attacks, anxiety, and other emotional trauma;

    d. Harm to her reputation and financial standing.

48. Snappt's breach of the implied warranty of merchantability proximately caused Plaintiff to suffer these damages, as the system failed to meet the ordinary expectations of reliability and accuracy for income verification.

49. Under 13 Pa. C.S.A. § 2314, Plaintiff is entitled to recover damages for the breach of implied warranty, including but not limited to:

    a. Compensatory damages for financial losses;

    b. Emotional distress damages;

    c. Costs and attorney's fees as appropriate under Pennsylvania law.

### THIRD CAUSE OF ACTION

**Violation of the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 et seq.)**

50. Plaintiff incorporates by reference all allegations set forth in the preceding paragraphs as though fully stated herein.

51. The Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., was enacted to ensure the accuracy, fairness, and privacy of information used in consumer credit transactions. The FCRA imposes obligations on entities that collect, disseminate, or use consumer information, including credit reporting agencies and third-party service providers such as Defendant Snappt, Inc.

52. 15 U.S.C. § 1681e(b) requires that any person or entity that furnishes or uses consumer reports must follow reasonable procedures to ensure maximum possible accuracy of the

information contained in the report. Defendant Snappt failed to follow reasonable procedures in the processing of Plaintiff's income verification, as its AI-based system erroneously flagged Plaintiff's valid paystubs as fraudulent or altered.

53. Snappt's flawed AI system used incorrect, inaccurate, or incomplete information in verifying Plaintiff's income documents, causing Plaintiff to suffer harm in the form of a wrongful denial of housing. This failure to ensure accuracy violated Snappt's duty under 15 U.S.C. § 1681e(b).

54. 15 U.S.C. § 1681i(a) requires entities that furnish consumer reports to conduct a reasonable investigation when a consumer disputes the accuracy of the information in their file. Plaintiff contacted Snappt to challenge the erroneous flagging of her paystubs and requested clarification regarding the AI system's findings. Despite Plaintiff's request, Snappt failed to conduct a reasonable investigation into the dispute or provide any meaningful explanation of the AI's decision-making process. Snappt's refusal to investigate or correct the erroneous report violated 15 U.S.C. § 1681i(a).

55. Snappt's failure to promptly investigate and correct the inaccurate information used in Plaintiff's income verification led to the continued wrongful denial of Plaintiff's housing application and caused her to suffer financial harm, emotional distress, and reputational damage.

56. 15 U.S.C. § 1681g(a)(1) provides that any person who uses a consumer report to take adverse action against a consumer must notify the consumer and provide them with a copy of the report and a summary of their rights. Snappt failed to provide Plaintiff with the necessary information regarding the adverse action taken against her and did not disclose the full findings of its AI system. This failure to notify Plaintiff of the basis for the adverse action violated 15 U.S.C. § 1681g(a)(1).

57. Under 15 U.S.C. § 1681n, any person or entity that willfully fails to comply with the requirements of the FCRA is liable for actual damages, punitive damages, and attorney's fees. Snappt's willful disregard for its obligations under the FCRA, including its failure to investigate the dispute and ensure the accuracy of Plaintiff's information, subjects it to liability for actual and punitive damages.

58. Under 15 U.S.C. § 1681o, any person or entity that negligently fails to comply with the FCRA is liable for actual damages and attorney's fees. Snappt negligently failed to

comply with its FCRA obligations by not conducting a reasonable investigation into the disputed information and not providing accurate information about Plaintiff's income verification.

59. As a direct and proximate result of Snappt's failure to comply with the FCRA, Plaintiff has suffered actual damages, including but not limited to:

- Wrongful denial of housing, leading to financial losses associated with securing alternative accommodations;

- Emotional distress caused by the wrongful denial of housing and reputational harm due to the false flagging of her income documents as fraudulent;

- Additional financial costs associated with attempts to dispute the inaccurate information.

60. For the reasons stated above, Plaintiff seeks the following relief under the Fair Credit Reporting Act (FCRA): actual damages for financial losses and emotional distress caused by Defendant's violations of the FCRA, as provided under 15 U.S.C. §§ 1681n and 1681o; punitive damages for Defendant's willful violations of the FCRA, as provided under 15 U.S.C. § 1681n; attorney's fees and costs, as provided under 15 U.S.C. §§ 1681n and 1681o; any other relief the Court deems just and proper.

## FOURTH CAUSE OF ACTION

**Violation of Philadelphia Fair Practices Ordinance, Chapter 9-1100: Protections Against Unlawful Discrimination, § 9-1102(cc)**

40. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

41. Pursuant to Chapter 9-1100 of the Philadelphia Code, Fair Practices Ordinance: Protections Against Unlawful Discrimination, it is unlawful to discriminate based on a person's source of income in any housing or real property practice. Specifically, § 9-1108(1)(a) makes it unlawful for an owner or other person responsible for approving a rental application to "discriminate in the terms, conditions, or privileges of the sale, rental, or lease of any housing accommodation" based on source of income.

42. The Defendant has violated § 9-1108(1)(a) by using its AI-driven screening system, which disproportionately and unfairly penalizes applicants whose employers use payroll software that the Defendant's system, Snappt, cannot properly analyze. In Plaintiff's case, her employer provides paystubs through such software, and Snappt's system either rejects these submissions outright or flags them as suspicious without any reasonable basis. As a result, Plaintiff's application was wrongly flagged, denying her housing opportunities.

43. Defendant also violates § 9-1108(1)(c), which prohibits any person from using applications or processes in connection with housing that express, directly or indirectly, any discriminatory limitations, specifications, or restrictions. The AI-based income verification system is inherently biased against certain types of income documents by requiring paystubs from specific payroll software. Defendant's system indirectly imposes discriminatory limitations on applicants whose income verification documents come from other sources or systems, particularly disadvantaging those whose income is not reflected through conventional or automated payroll systems.

44. Furthermore, § 9-1108(1)(f) prohibits anyone from announcing or following a discriminatory policy that limits or denies individuals the opportunity to obtain housing through systems that implement quota-like barriers. Defendant's policies and its reliance on faulty AI assessment tools effectively limit the housing opportunities of individuals like Plaintiff, based solely on arbitrary distinctions regarding the format and origin of paystubs.

45. In addition, § 9-1108(1)(k) prohibits aiding, abetting, or inciting the commission of unlawful housing practices. By failing to provide a transparent, comprehensive report of the AI's assessment of Plaintiff's income submissions, Defendant not only aids in the discrimination against applicants with non-conventional income documentation but also conceals its discriminatory practices. The lack of transparency deprives Plaintiff and other affected individuals of the ability to challenge or understand the basis of their wrongful rejections, further entrenching the unlawful practice.

46. Defendant's conduct directly violates § 9-1108(4), which requires a clear written explanation of the reasons for denial, including documentation of any third-party assessments used to evaluate the applicant's eligibility. Defendant, a third party assessor, fails to provide Plaintiff and others such comprehensive statements. This allows

Defendant to keep discriminatory effects of its flawed AI system hidden, thus evading accountability for the harm caused to Plaintiff and others similarly situated.

47. Defendant's discriminatory practices, including its arbitrary and biased methods of assessing income submissions, interfered with Plaintiff's opportunity to secure housing, in violation of the Fair Practices Ordinance, § 9-1108(1)(a), § 9-1108(1)(c), § 9-1108(1)(f), and § 9-1108(1)(k).

48. As a direct result of Defendant's discriminatory practices based on source of income, Plaintiff was wrongfully denied housing opportunities. This has caused Plaintiff significant emotional distress and corresponding physical manifestations, embarrassment, reputational damage, and frustration, in addition to the practical harm of being unable to secure housing due to a discriminatory and opaque process. Defendant's failure to provide transparency regarding its income verification system leaves applicants like Plaintiff with no recourse to challenge or correct erroneous denials, further exacerbating the harm caused.

49. Plaintiff is entitled to the full range of remedies available under § 9-1122 of the Fair Practices Ordinance, including but not limited to compensatory damages, punitive damages to deter future violations, reasonable attorney's fees, court costs, and injunctive relief to prevent Defendant from continuing these discriminatory practices. Plaintiff seeks appropriate injunctive relief to compel Defendant to provide transparency in its AI assessments and to prevent further discrimination against applicants based on their source of income.

## FIFTH CAUSE OF ACTION

**Fraud Under Pennsylvania Laws**

50. Plaintiff incorporates by reference all allegations set forth in the preceding paragraphs as though fully stated herein.

**Fraudulent Misrepresentation (Restatement (Second) of Torts § 552)**

51. Under Pennsylvania law, fraudulent misrepresentation requires:

    a. (1) A misrepresentation of a material fact;

    b. (2) Made with knowledge of its falsity or reckless disregard for its truth;

18

    c.   (3) Intent to mislead another into relying on it;

    d.   (4) Justifiable reliance by the recipient on the misrepresentation; and

    e.   (5) Resulting injury proximately caused by the reliance.

    These elements are set forth in Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882 (1994).

52. Misrepresentation of Material Fact: Defendant Snappt, Inc. made material misrepresentations regarding the reliability, accuracy, and capabilities of its AI-based income verification system. Snappt falsely represented that its system could accurately verify income from various payroll software systems, including the payroll system used by Plaintiff's employer, when in fact it could not. This misrepresentation was a material fact because it directly affected Plaintiff's ability to secure housing.

53. Knowledge of Falsity or Reckless Disregard for the Truth: Snappt either knew or acted with reckless disregard for the truth of its misrepresentations. Snappt was aware, or should have been aware, that its AI system was incapable of processing paystubs from certain payroll software, including the one used by Plaintiff's employer. Despite this knowledge, Snappt continued to represent its system as reliable and accurate.

54. Intent to Mislead: Snappt made these misrepresentations with the intent to mislead Plaintiff and other consumers into relying on its income verification system. By falsely advertising its AI system as capable of handling all income verifications, Snappt intended to induce consumers, including Plaintiff, to use and trust the system, knowing that the system was flawed.

55. Justifiable Reliance: Plaintiff justifiably relied on Snappt's representations regarding the reliability of its AI verification system. Plaintiff paid the required application fee to submit her income documents for verification, believing that Snappt's system would accurately verify her valid income documents. Plaintiff had no reason to suspect that Snappt's system was defective or unable to process her paystubs.

56. Injury Proximately Caused by Reliance: As a direct result of her reliance on Snappt's fraudulent misrepresentation, Plaintiff suffered significant harm, including:

    a.   Financial losses from the wrongful denial of housing and the costs associated with temporary accommodations;

b. Emotional distress due to the false flagging of her income documents and the reputational harm of being wrongfully accused of submitting fraudulent information;

c. Physical symptoms such as anxiety, sleeplessness, and chest tightness due to the stress of being denied housing.

57. Snappt's fraudulent misrepresentation constitutes intentional fraud under Pennsylvania law, and Plaintiff is entitled to recover compensatory damages for the financial and emotional harm caused by Snappt's false statements. Under Pennsylvania law, fraudulent misrepresentation is actionable when the defendant knowingly makes false statements with the intent to induce reliance, as established in Gibbs v. Ernst and Restatement (Second) of Torts § 552.

---

**Fraudulent Concealment (Restatement (Second) of Torts § 550)**

58. Under Pennsylvania law, fraudulent concealment occurs when:

a. (1) There is a deliberate concealment of a material fact by the defendant;

b. (2) The defendant knew the concealed fact was material;

c. (3) The defendant intended to deceive the plaintiff by concealing the fact;

d. (4) The plaintiff justifiably relied on the defendant's conduct; and

e. (5) The plaintiff suffered damages as a result.

These elements were established in Fine v. Checcio, 582 Pa. 253, 870 A.2d 850 (2005).

59. Deliberate Concealment of a Material Fact: Defendant Snappt deliberately concealed a material fact from Plaintiff and other consumers: that its AI system was unable to accurately analyze paystubs from certain payroll software, including the software used by Plaintiff's employer. This fact was critical to Plaintiff's ability to have her income documents accurately verified.

60. Knowledge of Materiality: Snappt knew or should have known that the concealed fact—the limitations of its AI system—was material. Snappt was aware that consumers, including Plaintiff, would rely on its system to verify their income for important

transactions, such as securing housing. Snappt knew that if the limitations of its system were disclosed, consumers would be less likely to rely on or use its services.

61. Intent to Deceive: Snappt intended to deceive Plaintiff and other consumers by concealing the limitations of its AI system. Snappt knew that revealing the system's inability to properly verify income from certain payroll software would undermine its business model and reduce the likelihood that landlords and tenants would use its services. By concealing this information, Snappt intended to induce consumers, including Plaintiff, to rely on the defective system.

62. Justifiable Reliance: Plaintiff justifiably relied on Snappt's conduct. Plaintiff believed that Snappt's system could accurately verify her income documents and, therefore, submitted them for verification as part of her rental application. Plaintiff had no reason to suspect that Snappt was concealing the limitations of its system.

63. Injury Caused by the Concealment: As a direct result of Snappt's fraudulent concealment, Plaintiff suffered the following injuries:

   a. Financial harm, including the costs of temporary accommodations due to the wrongful denial of housing;

   b. Emotional distress from the frustration and humiliation of having her valid income flagged as fraudulent and being denied housing;

   c. Physical symptoms caused by the emotional stress, including sleeplessness, anxiety, and chest tightness.

64. Snappt's fraudulent concealment was intentional and caused substantial harm to Plaintiff. Under Pennsylvania law, a defendant's deliberate concealment of material facts, where such concealment causes the plaintiff to suffer damages, constitutes actionable fraud. As stated in Fine v. Checcio, fraudulent concealment occurs when the defendant deliberately hides or withholds information that the plaintiff would have relied upon if it had been disclosed.

65. Plaintiff is entitled to recover compensatory damages for the financial, emotional, and physical harm caused by Snappt's fraudulent concealment. Plaintiff also seeks punitive damages due to the intentional and egregious nature of Snappt's conduct.

66. For the reasons set forth above, Plaintiff seeks the following relief for Snappt's fraudulent misrepresentation and fraudulent concealment under Pennsylvania law: compensatory

damages for financial losses, emotional distress, and physical harm; punitive damages for Snappt's intentional and reckless fraudulent conduct; attorney's fees and costs associated with bringing this action; and any other relief the Court deems just and proper.

## **SIXTH CAUSE OF ACTION**

**Negligence and Negligent Misrepresentation Under Pennsylvania Law**

**A. Negligence**

67. Plaintiff incorporates by reference all allegations set forth in the preceding paragraphs as though fully stated herein.

68. Under Pennsylvania law, negligence requires the plaintiff to establish four elements:

  a. (1) Duty of care: The defendant owed a duty of care to the plaintiff;

  b. (2) Breach of duty: The defendant breached that duty;

  c. (3) Causation: The defendant's breach caused harm to the plaintiff; and

  d. (4) Damages: The plaintiff suffered actual harm as a result of the breach. These elements are set forth in Martin v. Evans, 551 Pa. 496, 711 A.2d 458 (1998).

69. Duty of Care: Defendant Snappt, Inc. owed a duty of care to Plaintiff and other consumers who relied on its AI-based income verification system as part of their rental application process. As a service provider, Snappt had a duty to exercise reasonable care in ensuring the accuracy, reliability, and transparency of its system.

70. Snappt had a duty to provide a service that met the standard of care expected from an entity offering income verification services for housing. This includes the obligation to ensure that its AI system properly analyzed income documentation and accurately reported the results, as required under Restatement (Second) of Torts § 552, which has been adopted in Pennsylvania.

71. Breach of Duty: Defendant breached its duty of care by failing to ensure that its AI-based system accurately analyzed Plaintiff's income documents. Specifically:

  a. The system was incapable of properly processing paystubs from certain payroll software, including those used by Plaintiff's employer;

  b. Snappt failed to disclose these limitations to Plaintiff or other consumers;

  c. Snappt failed to provide any meaningful report or explanation of its flawed results, depriving Plaintiff of the ability to correct any perceived issues with her income documentation.

72. By failing to ensure that its system was capable of accurately analyzing all types of payroll documents, and by failing to provide adequate disclosures regarding its limitations, Snappt fell below the standard of care expected from a reasonable provider of such services.

73. Causation: As a direct result of Snappt's breach of its duty of care, Plaintiff was wrongfully denied housing. Snappt's flawed system incorrectly flagged Plaintiff's legitimate income as fraudulent, which caused her rental application to be rejected. This led to severe financial and emotional harm to Plaintiff, as she was forced to incur significant costs for temporary accommodations and endured emotional distress from being wrongfully labeled as submitting fraudulent documents.

74. Damages: Plaintiff suffered the following damages as a direct result of Snappt's negligence:

  a. Financial losses due to the denial of housing and the costs associated with securing temporary accommodations;

  b. Emotional distress, including anxiety and sleeplessness, stemming from the wrongful denial of housing;

  c. Reputational harm caused by the false flagging of Plaintiff's valid income documents.

75. Under Pennsylvania law, a defendant who breaches their duty of care and causes harm to the plaintiff is liable for compensatory damages. Plaintiff is entitled to recover for her financial, emotional, and reputational harm under Pennsylvania common law negligence principles as applied in Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280 (1978).

---

**B. Negligent Misrepresentation**

76. Plaintiff incorporates by reference all allegations set forth in the preceding paragraphs as though fully stated herein.

77. Negligent misrepresentation in Pennsylvania requires the plaintiff to prove the following elements:

    a. (1) A misrepresentation of a material fact;

    b. (2) Made under circumstances in which the misrepresenter ought to have known its falsity;

    c. (3) With an intent to induce another to act on it;

    d. (4) Which results in justifiable reliance by the plaintiff; and

    e. (5) Resulting damages.

    These elements are set forth in Bortz v. Noon, 556 Pa. 489, 729 A.2d 555 (1999).

78. Misrepresentation of Material Fact: Snappt misrepresented the capabilities of its AI-based income verification system by asserting that it could accurately process all types of payroll documents, including those from Plaintiff's employer. In reality, the system was unable to analyze Plaintiff's paystubs correctly, leading to the false conclusion that her income documents were fraudulent.

79. Should Have Known Falsity: Snappt, as the designer and provider of its AI system, knew or should have known that its system was incapable of properly processing certain payroll documents. Despite this knowledge, Snappt made representations about the accuracy and reliability of its system without disclosing its limitations. This failure to disclose material facts constitutes negligent misrepresentation under Restatement (Second) of Torts § 552, which governs liability for negligent misrepresentation in Pennsylvania.

80. Intent to Induce Reliance: Snappt made these representations with the intent that Plaintiff and other rental applicants would rely on its income verification services in their housing applications. Snappt knew that landlords and property managers required applicants to use its verification system and that applicants, including Plaintiff, would rely on the accuracy of its system in completing their applications.

81. Justifiable Reliance: Plaintiff justifiably relied on Snappt's representations about the accuracy and reliability of its income verification system when she submitted her income documents. Plaintiff had no reason to suspect that the system would misinterpret her legitimate paystubs as fraudulent. As held in Toy v. Metropolitan Life Insurance Co., 593

Pa. 20, 928 A.2d 186 (2007), reliance is justifiable if the plaintiff's belief in the misrepresentation was reasonable under the circumstances.

82. Resulting Damages: As a result of Plaintiff's reliance on Snappt's misrepresentations, she suffered financial losses, emotional distress, and reputational harm. Snappt's misrepresentation of the capabilities of its AI system led to the wrongful denial of housing and caused Plaintiff significant harm.

83. Under Pennsylvania law, negligent misrepresentation entitles the injured party to recover compensatory damages for any financial losses and emotional harm caused by their reliance on the misrepresentation. Plaintiff seeks to recover damages for the financial costs of securing alternative accommodations, the emotional distress of being wrongfully denied housing, and the reputational harm from being falsely accused of submitting fraudulent documents, as recognized in Bilt-Rite Contractors, Inc. v. The Architectural Studio, 581 Pa. 454, 866 A.2d 270 (2005).

84. For the reasons set forth above, Plaintiff seeks the following relief under Pennsylvania law for negligence and negligent misrepresentation: compensatory damages for the financial, emotional, and reputational harm caused by Defendant's negligent actions and misrepresentations; attorney's fees and costs as permitted under applicable law; and any other relief the Court deems just and proper.

## SEVENTH CAUSE OF ACTION

**Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. §§ 201-1 – 201-9.2)**

85. Plaintiff incorporates by reference all allegations set forth in the preceding paragraphs as though fully stated herein.

86. The Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) prohibits any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Under 73 P.S. § 201-2(4)(xxi), it is unlawful to engage in any fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

87. Plaintiff applied to rent an apartment and was required to pay a non-refundable application fee. This fee covers the cost of processing rental applications, which includes the costs associated with using third-party services such as Defendant Snappt's AI income verification system. Thus, Plaintiff, as the one paying for these services, is a consumer under the UTPCPL, 73 P.S. § 201-2(3), as the application fee was used to compensate Snappt for the verification services.

88. Defendant Snappt, through its AI system, engaged in unfair and deceptive acts or practices by:

   a. Falsely flagging Plaintiff's legitimate income documents as altered or fraudulent, despite Plaintiff's income being valid and her paystubs being accurate.

   b. Failing to disclose to Plaintiff that its AI system could not properly analyze paystubs generated by her employer's payroll software, creating a likelihood of confusion about the reliability of Snappt's services. This constitutes a violation of 73 P.S. § 201-2(4)(ii), which prohibits causing confusion or misunderstanding as to the source, approval, or characteristics of services.

   c. Failing to provide Plaintiff with a comprehensive report explaining the reasons for the rejection of her documents, which deprived her of the opportunity to correct or challenge the denial. This lack of transparency constitutes a deceptive omission in violation of 73 P.S. § 201-2(4)(v), which prohibits misrepresenting the characteristics and benefits of services.

89. Snappt's representation that its AI system provided reliable, accurate, and impartial verification of income, when in fact it was incapable of properly analyzing paystubs from certain payroll systems, constitutes a deceptive act under 73 P.S. § 201-2(4)(vii), which prohibits misrepresenting the standard, quality, or grade of services.

90. Snappt's failure to inform Plaintiff, and similarly situated applicants, about the limitations of its system before processing their application fees amounts to an unfair practice under 73 P.S. § 201-2(4)(ix), which prohibits the advertisement of services without the intent to supply reasonably expected public demand. Defendant had no reasonable basis to expect that its AI system could properly verify all types of paystubs yet collected fees from applicants as if it could.

91. Defendant Snappt's actions, as described above, created a likelihood of confusion and misunderstanding as to the reliability of its services, directly violating 73 P.S. § 201-2(4)(xxi), which prohibits fraudulent or deceptive conduct.

92. As a result of these unfair and deceptive practices, Plaintiff suffered ascertainable losses, including but not limited to the application fee paid for the AI verification service that falsely flagged her legitimate income, the costs incurred due to the wrongful denial of housing, and the emotional distress caused by being labeled as submitting fraudulent documents.

93. Under 73 P.S. § 201-9.2(a), any person who suffers an ascertainable loss of money or property as a result of unlawful practices may bring a private action to recover actual damages or statutory damages of $100, whichever is greater. Plaintiff seeks actual damages for the financial and emotional harm she has suffered as a result of Snappt's deceptive acts.

94. The court may, at its discretion, award up to three times the actual damages sustained, as well as reasonable attorney fees and costs under 73 P.S. § 201-9.2(a). Given the willful and egregious nature of Defendant's conduct, which impacted not only Plaintiff but potentially numerous other applicants, Plaintiff seeks treble damages and attorney's fees as provided by the law.

95. Additionally, under 73 P.S. § 201-4.1, if the court finds that Defendant engaged in willful deceptive practices, Plaintiff may also seek injunctive relief to prevent Snappt from continuing its deceptive practices and requiring Defendant to disclose the limitations of its AI system to all applicants.

96. For the reasons set forth above, Plaintiff seeks the following relief under the Pennsylvania Unfair Trade Practices and Consumer Protection Law: actual damages and/or statutory damages of $100, whichever is greater, as provided under 73 P.S. § 201-9.2(a); treble damages due to the willful and egregious nature of Defendant's conduct, under 73 P.S. § 201-9.2(a); reasonable attorney's fees and costs, as allowed by 73 P.S. § 201-9.2(a); injunctive relief to prevent Defendant from continuing to engage in deceptive practices and to require full disclosure of the limitations of its AI verification system, under 73 P.S. § 201-4.1; and any other relief the court deems just and proper.

## EIGHT CAUSE OF ACTION

**Intentional Infliction of Emotional Distress Under Pennsylvania Law**

97. Plaintiff incorporates by reference all allegations set forth in the preceding paragraphs as though fully stated herein.

98. Under Pennsylvania law, the tort of Intentional Infliction of Emotional Distress (IIED) arises when a defendant's extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another person. The Restatement (Second) of Torts § 46, which Pennsylvania courts have adopted, governs this cause of action.

99. For a claim of IIED to succeed under Pennsylvania law, the Plaintiff must prove:

   a. The conduct of the Defendant was extreme and outrageous;

   b. The conduct was intentional or reckless;

   c. The conduct caused severe emotional distress; and

   d. There was a causal connection between the conduct and the distress.

100. Defendant Snappt, through its intentional actions and reckless disregard for the rights of Plaintiff, engaged in conduct that was extreme and outrageous. Snappt's use of a defective AI system, which falsely flagged Plaintiff's valid income documents as fraudulent, constituted reckless behavior that went beyond the bounds of decency expected in a civil society. The system's refusal to approve Plaintiff's housing application, despite her legitimate income, reflects behavior that no reasonable person should be expected to endure.

101. Defendant's actions were taken with intentional or reckless disregard for the emotional harm they would cause. Snappt was aware, or should have been aware, that its AI system could not properly process paystubs from certain payroll systems, including those used by Plaintiff's employer. Despite this knowledge, Snappt failed to disclose the limitations of its system, leaving Plaintiff with no ability to correct the issue or seek alternative means of verification.

102. As a result of Snappt's conduct, Plaintiff endured severe emotional distress, which manifested in physical symptoms such as anxiety, chest tightness, difficulty sleeping, and increased heart rate. Plaintiff's distress was further heightened by the fact that she was wrongfully denied housing, forcing her into temporary accommodations and financial

instability. This distress is not fleeting or trivial, but severe and debilitating, warranting compensation under Pennsylvania law.

103.　　The Pennsylvania Superior Court has recognized IIED claims in cases where a defendant's conduct is so extreme and outrageous that it causes severe emotional trauma. In Hoy v. Angelone, 554 Pa. 134, 720 A.2d 745 (1998), the Pennsylvania Supreme Court reaffirmed that liability for IIED is imposed only where the conduct is so outrageous in character, and so extreme in degree, that it goes beyond all possible bounds of decency, and is regarded as atrocious and utterly intolerable in a civilized community. Snappt's reckless disregard for the accuracy of its income verification system, knowing that it would likely cause false accusations of fraud and housing denials, meets this high standard of extreme and outrageous conduct.

104.　　Snappt's actions were particularly egregious because it did not provide Plaintiff with any comprehensive explanation for why her paystubs were flagged. This lack of transparency, combined with the false flagging of her valid documents, intensified Plaintiff's emotional distress, as she was left without recourse or the ability to correct the errors caused by Snappt's flawed system.

105.　　Causation is clear in this case. Snappt's extreme and outrageous conduct directly caused Plaintiff's severe emotional distress. The wrongful denial of housing, the financial burden of temporary accommodations, and the emotional trauma of being falsely accused of submitting fraudulent documents created an unrelenting strain on Plaintiff's mental and emotional well-being, which manifested physically as well.

106.　　Under Pennsylvania law, Plaintiff is entitled to recover compensatory damages for the emotional distress caused by Snappt's conduct. These damages include, but are not limited to:

- The psychological trauma, anxiety, and emotional distress suffered by Plaintiff;

- The physical manifestations of that distress, including chest pain, sleeplessness, and anxiety-induced health problems;

- The costs associated with medical treatment required as a result of the emotional and physical toll Snappt's conduct has taken.

107.　　Additionally, Plaintiff may seek punitive damages under Pennsylvania law where the defendant's conduct was intentional or reckless and demonstrated a complete disregard

for the rights of others. Given the intentional and reckless nature of Snappt's actions, Plaintiff is entitled to punitive damages to deter similar conduct in the future.

108.    For the reasons set forth above, Plaintiff seeks the following relief under Pennsylvania law for intentional infliction of emotional distress: compensatory damages for the severe emotional and psychological harm caused by Snappt's extreme and outrageous conduct; compensatory damages for the physical manifestations of that distress, including medical costs and related expenses; punitive damages to punish Defendant for its reckless and intentional conduct and to deter future wrongful acts; and any other relief the court deems just and proper.

## NINTH CAUSE OF ACTION

**Unjust Enrichment**

109.    Plaintiff incorporates by reference all allegations set forth in the preceding paragraphs as though fully stated herein.

110.    At all relevant times, Defendant, Snappt, Inc., was engaged in providing income and document verification services using its proprietary AI technology to landlords and rental agencies for the purposes of evaluating applicants' income documentation.

111.    Unjust enrichment in Pennsylvania is an equitable doctrine, and occurs when:

    a.  The plaintiff confers a benefit on the defendant;

    b.  The defendant appreciates or retains that benefit; and

    c.  It would be inequitable for the defendant to retain the benefit without payment or restitution. (See Mitchell v. Moore, 729 A.2d 1200 (Pa. Super. 1999); Styer v. Hugo, 422 Pa. Super. 262, 619 A.2d 347 (1993))

112.    Plaintiff, through the process of applying for rental housing, paid an application fee that was used, in part, to cover the cost of services provided by Snappt, including the use of its AI technology to verify her income documents.

113.    Plaintiff reasonably expected that Snappt would provide an accurate and reliable verification service in exchange for the benefit conferred, and that Snappt would properly review her documents without falsely flagging them as fraudulent or altered.

114.    Snappt, Inc., by accepting the application fee for its verification services, received a direct financial benefit from Plaintiff's payment.

115.    Despite this, Snappt failed to deliver a competent and reliable service in exchange for the benefit conferred, as its AI system erroneously flagged Plaintiff's legitimate pay stubs as altered, resulting in Plaintiff being wrongfully denied housing.

116.    Snappt was unjustly enriched by retaining the financial benefit of the application fee without providing a service that met the standard reasonably expected by Plaintiff or the industry.

117.    It would be inequitable for Snappt to retain the benefit of the payment without restitution to Plaintiff, given that:

   a.    Plaintiff's housing application was wrongfully denied based on Snappt's erroneous verification;

   b.    Plaintiff suffered financial and emotional harm as a result of the rejection, including the costs of staying in a hotel and further application fees;

   c.    Snappt's verification system was defective and failed to deliver on the promises made about its accuracy and reliability.

118.    The retention of the benefit by Snappt, without just compensation to Plaintiff for the inadequate and harmful services provided, constitutes unjust enrichment under Pennsylvania law.

## **TENTH CAUSE OF ACTION**

**Breach of Fiduciary Duty**

119.    Plaintiff incorporates by reference all allegations set forth in the preceding paragraphs as though fully stated herein.

120.    At all relevant times, Defendant, Snappt, Inc., held itself out as a trusted provider of income verification services for the purposes of determining rental housing applications. Through its proprietary AI technology, Snappt offered to verify income documentation to aid landlords and property management companies in evaluating applicants.

121.    Under Pennsylvania law, a fiduciary duty arises when there is a special relationship of trust and confidence between parties, where one party is entrusted to act in the best

interests of another. This fiduciary relationship can occur in situations where one party relies on the expertise or trustworthiness of the other, such as in business transactions or when managing important personal or financial information.

(Basille v. H & R Block, Inc., 777 A.2d 95 (Pa. Super. 2001); Robson v. EMC Insurance Cos., 785 A.2d 507 (Pa. Super. 2001))

122.   Snappt, by accepting Plaintiff's financial documents and acting as the third-party verifier of Plaintiff's income for housing application purposes, entered into a fiduciary relationship with Plaintiff. Snappt was entrusted to:

    a.   Accurately verify Plaintiff's income;

    b.   Exercise proper judgment and diligence in reviewing sensitive financial documents;

    c.   Ensure that its AI system was competent and reliable to avoid wrongful denials of housing based on faulty or inaccurate assessments.

123.   Plaintiff placed trust and confidence in Snappt to handle her sensitive personal financial information in a competent and professional manner. Snappt's role as an intermediary for verifying income created a special relationship wherein Snappt was expected to act in Plaintiff's best interests by performing its duties with care, skill, and accuracy.

124.   Snappt breached its fiduciary duty by failing to act with the required level of care, loyalty, and good faith expected in its role as a trusted verifier of Plaintiff's financial information. Specifically, Snappt:

    a.   Negligently or recklessly allowed its AI system to wrongfully flag legitimate pay stubs as altered or fraudulent without adequate review or investigation;

    b.   Failed to disclose the limitations of its verification system, particularly its inability to properly assess income from non-traditional payroll systems used by Plaintiff's employer;

    c.   Ignored inquiries and failed to communicate transparently with Plaintiff, refusing to provide comprehensive reports or further explanation when requested;

    d.   Failed to correct or recant its incorrect assessment, even after Plaintiff provided evidence from her employer confirming the authenticity of her income documents.

125.   As a result of this breach of fiduciary duty, Plaintiff was wrongfully denied housing, which led to substantial financial loss, emotional distress, and damage to her reputation.

126.   Snappt, by virtue of its role in the verification process and the trust placed in it by Plaintiff, had a duty to protect her best interests. Its failure to do so, and the harm that resulted from its breach of duty, gives rise to liability under Pennsylvania law for breach of fiduciary duty. (Basille v. H & R Block, Inc., supra; In re Estate of Clark, 467 Pa. 628, 359 A.2d 777 (1976))

## ELEVENTH CAUSE OF ACTION

**Breach of The Implied Covenant of Good Faith and Fair Dealing**

127.   Plaintiff incorporates by reference all allegations set forth in the preceding paragraphs as though fully stated herein.

128.   At all relevant times, Defendant, Snappt, Inc., was engaged in providing income verification services through its proprietary AI technology, and entered into a contractual relationship with consumers, including Plaintiff, either directly or through third-party landlords or property management companies.

129.   Under Pennsylvania law, every contract contains an implied covenant of good faith and fair dealing. This covenant imposes a duty on both parties to the contract to act honestly, fairly, and in good faith toward each other, ensuring that neither party does anything to destroy or injure the right of the other to receive the benefits of the contract. (Somers v. Somers, 418 Pa. Super. 131, 613 A.2d 1211 (1992); Baker v. Lafayette College, 350 Pa. Super. 68, 504 A.2d 247 (1986))

130.   Snappt, in offering its income verification services, entered into a contractual arrangement that included an implied duty to:

    a.   Act in good faith by ensuring that its services were accurate and reliable;

    b.   Act fairly in handling Plaintiff's income verification process, ensuring that Plaintiff received the benefit of accurate and proper verification services;

    c.   Avoid engaging in actions or conduct that would deprive Plaintiff of the benefit of the contractual relationship.

131.   Snappt breached the implied covenant of good faith and fair dealing by acting in a manner that was unfair, unreasonable, and contrary to Plaintiff's reasonable expectations. Specifically:

   a.   Snappt's AI system wrongfully flagged Plaintiff's legitimate pay stubs as altered or fraudulent without sufficient basis, resulting in a denial of Plaintiff's housing application;

   b.   Snappt failed to provide an accurate and competent verification process, thus depriving Plaintiff of the benefit of the service for which she (and others) paid through her rental application fee;

   c.   Snappt failed to disclose the limitations of its system, including its inability to properly assess income documents from certain payroll systems, which created an unfair and deceptive environment;

   d.   Snappt refused to provide transparent explanations or reports to Plaintiff when asked for clarification regarding the AI system's assessment, further depriving her of any opportunity to correct or challenge the false flagging.

132.   As a direct result of Snappt's breach of the implied duty of good faith and fair dealing, Plaintiff suffered:

   a.   Financial harm, including costs associated with being denied housing and the need for temporary accommodations;

   b.   Emotional distress, including anxiety and humiliation from the wrongful rejection of her housing application based on false information;

   c.   A loss of housing opportunities, which affected Plaintiff's financial standing and overall well-being.

133.   Snappt's conduct, in failing to act in good faith and failing to provide Plaintiff with the benefits reasonably expected under the agreement, violated the implied covenant of good faith and fair dealing under Pennsylvania law. (Somers v. Somers, supra; Baker v. Lafayette College, supra)

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mariamou Tangara respectfully requests that this Court enter judgment in her favor and against Defendant Snappt, Inc., and award her the following relief:

34

1. Compensatory damages for financial losses, emotional distress, and physical harm caused by Defendant's conduct;

2. Punitive damages due to Defendant's willful, reckless, and egregious conduct;

3. Treble damages as permitted under the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

4. Attorney's fees and costs incurred in bringing this action;

5. Injunctive relief;

6. Any other relief that this Court deems just and proper.

Respectfully submitted,

Mariamou Tangara

By: *Mariamou Tangara*

Email: mtangara002@gmail.com

Dated: October 9, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of October, 2024, a true and correct copy of Plaintiff's

**Motion to Remand and for Sanctions**, along with the accompanying **Proposed Order**, will be

served on the following via and first-class mail:

**Thomas R. DeCesar**

K&L GATES LLP

17 N. 2nd St., 18th Floor

Harrisburg, PA 17101

thomas.decesar@klgates.com

I further certify that a copy of this Motion and all related filings were electronically filed with the

Clerk of Court for the United States District Court for the Eastern District of Pennsylvania via

the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

_____

**Mariamou Tangara**

1300 Fairmount Ave, 706, Philadelphia, PA 19123

mtangara002@gmail.com

Date: October 9, 2024